

**ORDERED in the Southern District of Florida on October 27, 2011.**

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                    Case No. 10-20733-BKC-AJC

HARBOUR EAST DEVELOPMENT, LTD.,          Chapter 11

     Debtor.
_____/

HARBOUR EAST DEVELOPMENT, LTD.,

       Plaintiff,                              Adv. No. 10-3784-BKC-AJC-A

v.

7935 NBV, LLC and MARIO EGOZI,

       Defendants.
_____/

<u>**MEMORANDUM OPINION GRANTING 7935 NBV, LLC'S MOTION TO DISMISS
ADVERSARY COMPLAINT**</u>

     THIS MATTER came before the Court upon *Defendant 7935 NBV, LLC's Motion to
Dismiss Adversary Complaint* [ECF No. 15] (the "<u>Motion</u>") and the Harbour East Development,
Ltd.'s Response to Motion to Dismiss Adversary Complaint [ECF No. 25] (the "<u>Response</u>").  The

Court, having reviewed the record in this adversary proceeding, the Motion, the Response, and the arguments of counsel, does GRANT the Motion for the reasons set forth below.

## I.    FACTUAL BACKGROUND

Harbour East Development, Ltd. ("Harbour East") or the "Debtor") is the developer and owner of the luxury residential condominium development known as Cielo on the Bay ("Cielo" or the "Property") located at 7935 East Drive, North Bay Village. Cielo contains 35 residential condominium units (the "Condominium Units").

As set forth in the Complaint, on December 28, 2005, Harbour East and Northern Trust Bank of Florida, N.A. ("Northern Trust") entered into that certain Construction Loan Agreement pursuant to which Harbour East borrowed $16,900,000 (the "Construction Loan") from Northern Trust. (Complaint at ¶ 21).   Defendant Mario Egozi ("Egozi") personally guaranteed all obligations of Harbour East to Northern Trust pursuant to an absolute and unconditional payment guaranty (the "Guaranty").[1]  *Id.*

Concurrently with the Loan Agreement, and in order to evidence the obligation to repay the Construction Loan, Harbour executed and delivered to Northern on or about December 28, 2005, a Promissory Note (the "Note") in the original principal amount of $16,900,000.

Concurrently with the Loan Agreement and the Note, Harbour executed and delivered to Northern a Mortgage, Security Agreement, Financing Statement, Fixture Filing, and Assignment of Rents (the "Mortgage"), which secured the total principal amount of $16,900,000.   The Mortgage encumbers the Real Property, together with, among other things, all buildings, leases,

---

[1]  Harbour East refers to the Construction Loan Agreement, the Guaranty, and the Loan Sale Agreement in the Complaint.  These documents are central to the allegations set forth in the Complaint and were attached to NBV's Motion.  Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint, are central to its claim, and are not subject of an authenticity dispute.  *SFM Holdings, Ltd. v. Banc of America Securities, LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *Venture Assoc. Corp. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993).

rents, easements, rights, deposits, proceeds, awards, income, revenues, improvements, equipment, and fixtures thereon.

On or about December 21, 2009, Northern Trust sold the loan to NBV, as the designee of TMS FL 2, Inc., pursuant to that certain Loan Sale Agreement, dated as of December 21, 2009 (the "Loan Sale Agreement").

## II.    STANDARD OF REVIEW

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted if the plaintiff does not 'plead enough facts to state a claim to relief that is plausible on its face.'" *Reese v. JPMorgan Chase & Co.,* 686 F.Supp.2d 1291, 1298 (S.D. Fla. 2009), *quoting Twombly,* 127 S.Ct. at 1974. "To do so, the plaintiff must include in the complaint more than 'a formulaic recitation of the elements of a cause of action.'" *Id.*  The factual allegations must be enough to raise a right to relief above the speculative level. *Id. citing Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007).  "Dismissal is appropriate where it is clear the plaintiff can prove no set of facts in support of the claims in the complaint.  Accordingly, the court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist*., 992 F.2d 1171, 1174 (11th Cir. 1993) (internal citations omitted).

III.    <u>DISCUSSION AND ANALYSIS</u>

At bottom, the claims asserted in the Debtor's Complaint [ECF No. 1] (the "<u>Complaint</u>") are predicated upon the alleged breach by lender Northern Trust of the construction loan agreement and breach of an alleged fiduciary duty to its borrower, Harbour East.  The factual allegations in the Complaint, however, are primarily focused on Mario Egozi, not Harbour East. Harbour East is a separate legal entity from Egozi that did not have a relationship with Northern Trust except as the borrower of the construction loan that funded construction of Cielo.

Throughout the Complaint, Harbour East blurs the distinction between itself and Egozi to assert claims that belong to and that are properly asserted solely by Egozi.  Except through conclusory allegations that fail to satisfy the pleading standard set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), Harbour East fails to plead with the requisite specificity that Northern Trust owed any duty to Harbour East (as opposed to Egozi) or that Northern Trust's conduct damaged Harbour East (as opposed to Egozi).

A.    <u>Harbour East Lacks Standing to Bring Claims that Solely Benefit Egozi.</u>

It is clear from the face of the Complaint that Harbour East is seeking to subordinate NBV's claims for Egozi's benefit.  Other than improving the priority of Egozi's claim, the subordination sought by Harbour East does not benefit any creditor other than Egozi.

In *Enron*, Judge Scheindlin suggests that the trustee only has standing to argue equitable subordination for the benefit of all creditors and for the estate's benefit, not on behalf of a subset of creditors or solely to advance one claim to the detriment of another.  *Enron Corp. v. Springfield Associates, LLC (In re Enron Corp.)*, 379 B.R. 425, 441-42 (S.D.N.Y. 2007).  Here, the alleged wrongdoing was a setoff by Northern Trust against Egozi's IMA account.  Actually, the estate appears to have benefitted from this setoff because it reduced the debt that Harbour

4

East owes to NBV.   As a remedy for the alleged wrongdoing, however, the Debtor is seeking to substitute a subrogation claim in favor of Egozi for the claim of NBV.  Based upon the reasoning in *Enron*, Harbour East has no standing to assert Egozi's alleged claims because the estate and its creditors generally benefitted from Northern Trustee's conduct.

B.    Count I Fails to State Claims for Subrogation or Subordination.

Count I seeks to equitably subordinate NBV's secured claim against Harbour East to an alleged secured claim in favor of Egozi against Harbour East in the amount of $3,041,884.80.

1.    Subrogation

In paragraph 96 of the Complaint, Harbour East requests that the Court allow a secured claim in favor of Egozi based upon the doctrine of equitable subrogation.  The Complaint, however, does not plead facts supporting the elements of a claim for subrogation.  To state an claim for equitable subrogation under Florida law, a plaintiff must demonstrate that (1) a payment was made to protect its own interest, (2) the payment was not voluntary, (3) the plaintiff was not primarily liable for the debt that was repaid, (4) the plaintiff paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party.  *Fibreboard Corp. v. Celotex Corp. (In re Celotex Corp.)*, 472 F.3d 1318, 1323 (11th Cir. 2006) citing *Dade Cty. Sch. Bd. v. Radio Station WQBA*, 731 So.2d 638, 646 (Fla. 1999).

Although Harbour East alleges that Northern Trust "appropriated over $3 million of Egozi's assets in his IMA Account" and applied the proceeds "to pay off the Debtor's $2,100,000 line of credit and reduce the balance of the Construction Loan", Harbour East does not further state the required elements of an equitable subrogation claim in the Complaint.  Complaint ¶ 72.

With respect to the portion of the $3 million that was allegedly applied by Northern Trust to satisfy the line of credit, even if the Court were to consider the repayment in full of the line of

credit to be a separate obligation for purposes of subrogation, any right to subrogation arising from the repayment of the line of credit is Egozi's cause of action, not the Debtor's. Northern Trust allocated approximately $3 million of Egozi's personal funds to pay off the Debtor's line of credit.

Here, the question of subrogation centers on whether Egozi paid a debt for which he was primarily responsible or whether he was acting as a guarantor. Ultimately Harbour East has no standing to bring this claim. Egozi is the proper party to request subrogation to NBV.

Because the Complaint contained allegations that specifically preclude a successful claim for equitable subrogation under Eleventh Circuit law, Court I will be dismissed to the extent it seeks to state a claim for equitable subrogation.

    2.    <u>Equitable Subordination</u>

        a.    <u>Elements of Equitable Subordination</u>

The Court also dismisses Count I because it fails to state a claim for equitable subordination. To state a claim for equitable subordination, Harbour East must allege that (a) NBV has engaged in some type of inequitable conduct, (ii) the misconduct must has resulted in injury to the creditors of Harbour East or conferred an unfair advantage on NBV, and (iii) subordination of NBV's claim is not inconsistent with the Bankruptcy Code. *Benjamin v. Diamond (In re Mobile Steel* Corp.), 563 F.2d 692 (5th Cir. 1977). The Fifth Circuit, in a later case, expanded upon *Mobile Steel*, indicating that, while broad, equitable subordination is usually confined to three general paradigms: (1) when a fiduciary of the debtor misuses its position to the disadvantage of other creditors; (2) when a third party controls the debtor to the disadvantage of other creditors; and (3) when a third party actually defrauds other creditors. *In re U.S. Abatement Corp.*, 39 F.3d 556, 561 (5th Cir. 1994).

b.    <u>Northern Trust Did Not Owe a Fiduciary Duty to Harbour East</u>

The inequitable conduct alleged by Harbour East in the Complaint consists of alleged breaches of Northern Trust's alleged fiduciary duty to Egozi and to Harbour East.  Harbour East alleges that Northern Trust was a fiduciary to Harbour East, and misused its position to disadvantage other creditors.  Harbour East, however, has failed to adequately plead facts supporting its blanket allegation that Northern Trust recognized a "fiduciary responsibility" to Harbour East.

Instead, Harbour East relies on numerous allegations of breaches by Northern Trust of an alleged duty to Egozi, blurring the distinction between Egozi and Harbour East.  While it may or may not be the case that Northern Trust owed a fiduciary duty to Egozi as trustee of various trusts and as his personal financial advisor (and this Court makes no determination as to whether Northern Trust owed any fiduciary duty to Egozi), the details of the relationship between Northern Trust and Egozi are irrelevant to a determination of the relationship between Northern Trust and Harbour East.

Florida law provides that generally the relationship between a bank and its borrower is that of creditor to debtor, in which parties engaged in arms-length transactions and the bank owes no fiduciary responsibilities.  *First Nat'l Bank and Trust Company of the Treasure Coast v. Pack*, 789 So.2d 411, 414 (Fla. 4th DCA 2001).  "A lending institution is held to a fiduciary standard only when it usurps the customer's ability to make business decisions.  In effect, the lending institution must become the alter ego of its customer before it can be held to a fiduciary standard."  *In re Rich Capitol*, LLC, 436 B.R. 224, 232 (Bankr. S.D. Fla. 2010).

Although Florida courts have found, in very limited special circumstances, a fiduciary relationship arose between a lender and a borrower, such circumstances are not of record herein.

In *Barnett Bank of West Florida v. Hooper* 498 So.2d. 923 (Fla. 1986), the Florida Supreme Court cited with approval to two out-of-state cases that provide guidance in determining the existence of a fiduciary relationship -- *Klein v. First Edina Nat. Bank*, 196 N.W.2d 619 (Minn. 1972) and *Tokarz v. Frontier Fed. Sav. & Loan Ass'n*, 656 P.2d 1089 (Wash. App. 1982). These cases instruct that, to establish the existence of a fiduciary relationship, the bank must know or have reason to know that the customer is placing his trust and confidence in the bank and relying on the bank to counsel and inform him.  *Klein*, 196 N.W.2d at 623. Otherwise put, confidence must be reposed by one party and a trust accepted by the other.  *Capital Bank v.* MVB, Inc., 644 So.2d 515, 518 (Fla. 3d DCA 1994).  "Special circumstances" are required to impose a fiduciary duty on a bank acting as a construction lender, such as taking on extra services for a customer, receipt of a greater economic benefit than from a typical mortgage, or the exercise of extensive control over construction. *Tokarz*, 656 P.2d 1094.

Although Harbour East alleges generally that Northern Trust knew that Egozi and Harbour East were relying on it and trusting it to act as their fiduciary with respect to all aspects of the Project (Complaint at ¶ 88), Harbour East fails to plead any specific facts indicating that Northern Trust knowingly entered into a relationship of trust with Harbour East (as opposed to Egozi) or otherwise behaved in a manner to convert a debtor-creditor relationship into something more.  It is insufficient to simply recite that Northern Trust knew Egozi and Harbour East were relying on it, without specific factual allegations demonstrating that the loan transactions were less than arms-length and that there was some degree of dependency on Harbour East's part and some degree of undertaking by Northern Trust to advise, counsel and protect Harbour East.  *See Watkins v. NCNB Nat'l Bank Of Fla.*, 622 So.2d 1063, 1065 (Fla. 3d DCA 1993); *Mac-Gray v.*

*DeGeorge*, 913 So2d 630, 633 (Fla. 4th DCA 2005) (no fiduciary duty arose in arms-length transaction even where buyer claimed to rely on seller's expertise and representations).

Harbour East cannot cloak itself in Egozi's potential claims against Northern Trust, allegedly arising from Northern Trust's alleged failure to advise Egozi not to pledge the IMA account as security for line of credit facilities extended under the Construction Loan.  Indeed, the allegations set forth in the Complaint, even if accepted as true, fall short of the dominion and control required to transform Northern Trust into a fiduciary or alter ego of Harbour East.  *Rich Capitol*, 436 B.R. at 232.

In its Response, Harbour East suggests that the existence of a fiduciary duty is a fact question that cannot be resolved on a motion to dismiss.  Although the Debtor is correct that most such disputes give rise to issues of fact, dismissal is nevertheless appropriate when the facts alleged in the Complaint, even if proven as alleged, would not be sufficient to give rise to a fiduciary duty.

To prevail on an equitable subordination claim as to a claimant that is neither an insider nor a fiduciary, Harbour East must allege egregious conduct such as fraud, spoliation or overreaching, and must do so with particularity.  *Estes v. N&D Props., Inc. (In re N & D Props., Inc.*), 799 F.2d 726, 731 (11th Cir. 1986); *Rich Capitol*, 436 B.R. at 232-33.  No such allegations are set forth in the Complaint.  Because Harbour East has not pled specific facts demonstrating that Northern Trust accepted a fiduciary relationship as to Harbour East separate and apart from Egozi, and because there are no allegations of egregious conduct, Count I shall be dismissed.

C.    Count II's Reliance on Implied Covenant of Good Faith and Fair Dealing is Misplaced

Count II seeks "disallowance and subordination of NBV's claim to the extent of damages caused to the Debtor by Northern Trust's Breach of the Loan Agreement."  As an initial matter,

Count II does not state any basis for subordination and, to the extent that Harbour East seeks subordination in Count II, it fails to state a claim.

In paragraph 100 of the Complaint, Harbour East again suggests that Northern Trust owed Harbour East a fiduciary duty. As set forth above, under Florida law, lenders do not typically owe a fiduciary duty to their borrowers and Harbour East has not pled sufficient facts to demonstrate that Northern Trust accepted a fiduciary duty as to Harbour East. However, allegations regarding fiduciary duty are irrelevant to Count II, which concerns Northern Trust's alleged breach of the Construction Loan Agreement.

Count II is based upon Northern Trust's alleged unreasonable refusal to adjust minimum release prices for condominium units, consent to Harbour East leasing condominium units, and allow Harbour East the use of forfeited deposits. Harbour East asserts that these business decisions made by Northern Trust, although expressly within Northern Trust's rights under the Construction Loan Agreement, violated Northern Trust's implied duty of good faith and fair dealing. Complaint ¶ 101.

Under Florida law, the implied covenant of good faith and fair dealing cannot override express contractual terms or be utilized in the absence of an actionable breach of the express provisions of the Construction Loan Agreement. *Burger King Corp. v. Ashland Equities, Inc.*, 217 F. Supp. 2d. 1266, 1278 (S.D. Fla. 2002). Because the Construction Loan Agreement expressly allocates the discretion to approve leases and allow use of deposits to the lender, Construction Loan Agreement §§ 2.15, 2.17, & 10.10, Harbour East is unable to state a claim for breach of contract. There is no discretionary provision in the Construction Loan Agreement with respect to modifying the release prices, nor any authority requiring a mortgage lender to consent to release prices being reduced. Mere disagreement by Harbour East with Northern Trust's

exercise of its express rights under the Construction Loan Agreement does not violate the implied covenant of good faith and fair dealing under the facts stated herein. Therefore, because Count II fails to state a claim for breach of contract, it is dismissed.

D.    Counts III, IV, and V Must Be Dismissed

      1.    Counts III, IV, and V Are Predicated on the Existence of A Fiduciary Duty

Each of Counts III, IV and V presuppose the existence of a fiduciary duty. As set forth previously, under Florida law, lenders do not owe a fiduciary duty to their borrowers, absent special circumstances, and Harbour East has not pled sufficient facts to establish such special circumstances existed to demonstrate that Northern Trust accepted a fiduciary duty in favor of Harbour East. The Debtor has made conclusory allegations, such as "Northern Trust was a fiduciary of the Debtor because of Northern Trust's fiduciary relationship with the Debtor and Egozi" but such allegations are insufficient to state a claim for relief under *Twombly*, 550 U.S. at 570. Counts III, IV, and V therefore must be dismissed.

    IV.    **CONCLUSION**

Each of the claims asserted by Harbour East in the Complaint is insufficiently pled as a matter of law. Because the facts alleged are insufficient to give rise to a fiduciary duty running from Northern Trust to Harbour East and for the other reasons set forth more specifically herein, each count of the Complaint is dismissed. Accordingly, it is

ORDERED AND ADJUDGED that the Motion is GRANTED, and the Complaint is DISMISSED, in its entirety, with prejudice.

### #

Copy to:
Mindy A. Mora, Esq.
1450 Brickell Avenue, Suite 2300
Miami, Florida  33131

Attorney Mora shall serve a copy of this order on interested parties and file a certificate of service.